Council for appellate. If you would make your appearance and then proceed, please. Morning, your honors. Morning. We've saved the best for last. My name is Gary Benson. I'm here on behalf of the plaintiff, Darren Markley. With me is Sean O'Brien. Darren Markley was 55 years old when he was determinated by U.S. Bank in 2018. He served as the senior vice president and managing director of the Denver branch of the private wealth management group of the bank. U.S. Bank fired Mr. Markley following a pretextual bad faith investigation into accusations that he had improperly approved sales commissions for one of his subordinates, Robert Provencher. Let me interrupt and ask this question that was bothering me throughout these briefs. I see not a shred of evidence anywhere in this case that anybody harbored any animus towards your client based on his age. And so the focus on pretext is it has to be pretext for an inappropriate motive, which you're claiming is age. And, you know, I just I don't see any evidence. What what where can you point me in the record to somebody whose evidence that somebody had a problem with his age? I have to stand here and candidly tell you we have no direct evidence of age discrimination. We believe that the investigation. I certainly don't need to remind Judge Holmes of the United Airlines case that he authored just this summer. We believe that the United Airlines case and the progeny say that a pretextual investigation, a sham investigation is sufficient to allow a jury to infer that there was inappropriate motive in the United Airlines case. There was no direct evidence of age bias. And then do they have to speculate that the inappropriate motive was age? Well, at the end of the day, when we have pretext and if we if we can sufficiently, we are here on a motion for summary judgment. So I think all reasonable inferences on the investigation, whether it was a sham, should have been given by the trial court to Mr. Markley. Well, my point is the investigation could be a sham and they wanted to get rid of him, but it could have been they just don't like him. It had nothing to do with his age or his race or his national origin. And so that's the problem that I have with this case is there's nothing. Well, and again, we do not stand in front of you and dispute that there is a smoking gun, that there was age comments. But we don't believe that that is what is required in this case. I didn't hear in Judge McHugh's question the word direct evidence. I don't hear her. I don't take her to be talking about a smoking gun. We're talking about evidence, circumstantial evidence. And let me posit it this way. And this plays off of, I think, the line of questioning that was going on. If they didn't like him and they just created a sham investigation to get rid of him, would they violate the age discrimination statute? The answer to that question is no. OK, well, then the bottom line is there has to be some inference, circumstantial. We're not talking about smoking gun. We're not talking about direct evidence. There has to be a circumstantial inference that the reason they created a bad investigation, if it were that, was because they had age animus against him. And in Parker v. United Airlines, the case you're referring to, there was an allegation, certainly, that one supervisor had an unlawful prohibited animus against that employee. I don't see that here. Well, having read Stroop and I certainly do not need to tell you what your opinion says. We believe that there was, again, I use the word direct evidence. I did not see any direct evidence, any specific allegation of age bias or animus in that case. In fact, the person who fired him was older than he was. Yes. Let me try it this way. I'm going to list off a few. I'm going to list off some employees and tell me if there's any evidence that any one of these employees or you have alleged any one of these employees has age bias. I'm going to mispronounce these. But Plazola, Hof Schulte, his supervisor, Mr. Wall, Mr. Santini, Ms. Hawk, Mr. Ott, any of those people, as you stand here today, would you say harbored unlawful age bias against your client? Our position is that Mr. Ott was the leader of the effort to exit Mr. Markley. That doesn't answer the question. That's fair. But as a preface, Mr. Ott is the individual who we claim made the ultimate determination, not the SMDOC, the committee that rubber-stamped the decision. Do you have anything, anywhere, circumstantial inference that suggests Mr. Ott's problem with your client, Mr. Markley, was that he was old? No. I can't stand it. I think it would be disingenuous to tell you that I have any age bias comments or information in that regard. I don't think that would further my case or my argument. What I'm saying is I think it is up to a jury to infer from the sham investigation, as we call it, that perhaps there was an improper motive, and we think United Airlines, and I may be wailing into the wind here, but we think that United Airlines allows the jury to make that determination, and they did in that case. Go ahead. A jury has to make a, they have to have a fact from which they can make a reasonable inference, right? Yes. And while they could infer, if you have a sham investigation, if you do, that there was something going on, they have nothing to link that to any illegal reason, any reason that would give you a claim under this statute. It could be they didn't like the way he dressed. It could be they just didn't like him. It could be they wanted his job. None of those are protected by federal law. And so how does the jury, even if they believe that this was a sham investigation, how does the jury say, oh, yeah, and we find it was because he was old? Because he was in the protected class. He was 55. He was replaced by somebody who was 44. And the answer is they're going to assess the credibility at trial of Mr. Ott, of Ms. Santani, all of these other witnesses, as to the basis for this investigation and the procedural deficiencies, the bad faith with which it was conducted, and draw that inference. Anything other than his age and the age of the person who replaced him that would support such an inference? No. Again, I think it would be disingenuous to say that. We do not believe we stood here before you needing to have that. And, you know, you're the judges, and we may be wrong, but we read the cases as giving us the ability to prove this case without what we call direct evidence of discrimination. And I think when you look at Stroop versus United Airlines, in that case, like Markley, the plaintiff in that case brought idea claims after they were terminated, following an investigation into claims they had violated company policy. Like Markley, the plaintiffs in that case did not have direct evidence of age-based discrimination, never heard any age-related comment by those involved in their discharge. Like Markley, the plaintiffs in United Airlines presented evidence the investigation was a targeted effort designed to result in termination. Unlike Markley, the plaintiffs in United Airlines actually admitted to violations of company policy. My client, to this day, denies that he did anything wrong. Well, I mean, if you look at the questionnaire he filled out, he answered that Mr. Provencher had been involved in all of those sales meetings when Mr. Provencher himself told them, no, I wasn't. Well, I'm glad you asked that issue because that is part of our frustration with the lower court's decision. That audit spreadsheet that was given to my client, he didn't understand he was under investigation. Well, he didn't have to. I mean, your obligation to answer honestly doesn't turn on whether you think you're under investigation. Fair. But the question that he was asked was, was Mr. Provencher present at meetings, yes or no, Y slash N? And he said yes. Well, there was also a column that he could have commented. Yes, but our point here is that Mr. Markley understood that the question was, was he present at meetings? Yes. The way this got turned by U.S. Bank and the court was that he said he had to be present at every meeting. Well, Mr. Provencher indicated that some of the clients on that list he had never met. So there must be some of them that he wasn't present at any meetings. There are two categories in that audit spreadsheet. And some are new clients, in which case Mr. Provencher would not have had to have been present. Some were existing clients. It's important to note that on that spreadsheet, 58% of the commissions that comprise the reason for termination were never presented to my client. He had no idea that he was in an existential exercise. And it's proven by the fact that Mr. Ott, the president of the division, went to his boss, who was never interviewed as part of this investigation, Mary Martaschelli, and he said to her, Provencher is under investigation. Never mentioned to Mary that my client was under investigation and said, I can't tell you why. Ms. Martaschelli was never interviewed as part of this investigation. The person who approved, we're talking about Mr. Markley approved Provencher's commissions. Let's not forget that he had to have those commissions approved by Ms. Martaschelli. She was never asked. She was never confronted with, why did you approve this? She never got that opportunity. How is this not a sham investigation? When in the report, the original draft of the report, it says, Mr. Markley may not have violated these policies because he might have had the discretion to do this, and that was purposely removed from the final report that was provided to the SMDOC so that they wouldn't see that. They wouldn't know that there was another site. The SMDOC never knew that when he was finally confronted on the day of termination, when he was finally confronted, he said, if this is because of Mr. Crittenden and Tiffany Boscovich, I think they're motivated by retaliation. Their own corporate representative, the head of security, Jeff Walsh, said that needs to be investigated, and it wasn't. I'd like to reserve the last two and a half minutes. Retaliation in response to what? There was a sandbagging, I think is a term you may have seen in the briefing. The reason that we got to this investigation was that coworkers had complained about Mr. Markley. That's why we're here. It is our position that they had done that preemptively because Mr. Markley had stopped them from delaying the closing of a real estate transaction to benefit those people. But the retaliation would not have been for any protected conduct related to Mr. Markley. Absolutely not. And we had a state law claim that was not ruled on by the trial court when the court granted summary judgment. We have another claim. It is a retaliation whistleblower claim, but it is not related to age, to be clear. All right. Thank you, Your Honors. Good morning, Your Honors and Counsel. It's my pleasure to be here today on behalf of U.S. Bank System. Mr. Markley was terminated from his employment at U.S. Bank after he had twice violated their ethics policies within six and a half months. On both occasions, he did so to provide financial benefits to a coworker he supervised named Bob ProVenture. These transgressions cost U.S. Bank more than $50,000 in hard money. But more importantly, they undermine the integrity of the Denver Private Wealth Management operation. I note that during the earlier presentation there were some questions asked. In the statement of material undisputed facts, number 49, the reference is plaintiff never heard ought, make any age-related comments, or observe ought treat younger employees more favorably than plaintiff and has no knowledge about whether ought knew plaintiff's age. That was identified as undisputed. Is it enough that he's in the protected class and you replaced him with someone who's younger? No, it is not, Your Honor. The replacement was 47, by the way. That's undisputed fact 40. I think it's probably just a misstatement to say 44. But no, the replacement was also female. There's just as much reason to say it was based on gender as age. You could go forward and say the replacement maybe had different religious beliefs or was of a different race. There's nothing here that ties these facts and these claims to age. And even beyond that, the claim that there was a retaliation for earlier business practices, which was, by the way, undisputedly I think disproven by people within U.S. Bank before all this happened, that just goes to show it has nothing to do with age. It doesn't go to show there's a problem. It goes to show there's a non-age-related problem. The tests are pretty well defined by, frankly, the Jones case from the Tenth Circuit summarizes the U.S. Supreme Court law in a way that is Tenth Circuit specific, and I think that puts the focus on the right questions. The Hazen paper case says that if there's no evidence that age is actually played a role in the process or was determinative of the outcome, then there's no evidence that supports an age discrimination case. And I think that's in the prima facie part of the analysis, and we're in kind of a weird position here because the district court jumped over prima facie. I think the district court said, even assuming they haven't shown pretext, can we now on appeal for the first time say there's no prima facie case here? I believe you could. I don't believe you need to. You could also just go right to where the district court went. I think either ground would be available to this court. We noted that in our brief in a footnote that the prima facie case was not addressed directly by the trial court ruling. There are two cases, though, that explain why you need not go there, and that's Hazen paper and Reeves. Hazen paper said a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome. Reeves said there will be instances where although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact finder could conclude the action was discriminatory, and in that case the direction is the defendant should prevail, the employer should prevail. There are many reasons here that there is no basis for an age discrimination case, not simply the absence of any direct evidence, not simply the absence of, frankly, any age-related evidence. If you go through the statements of undisputed fact, they're ripe with the fact that people did not treat people differently because of age, they weren't aware of Mr. Markley's age, and those were the decision makers. And so when we look at what we have before us and we try to figure out exactly what kind of claim it is, we think the prima facie case is missing, that was not briefed, we recognize that. When we get to the issue of whether there is a sufficient basis to make a finding of enough evidence to move forward with an age discrimination case, there just isn't any evidence. Let me ask this question. You have two things going on here. One, you have the question of the investigation that resulted in the recommendation to terminate. Mr. Ott, if I understand it correctly, neither Mr. Ott or any of those other players, were the decision maker, formal decision maker, is that right? They were neither the formal nor actual decision makers. But Mr. Peloso or whatever was involved in doing the investigation, all of that. So let's assume for the moment that the plaintiff could squeak through and say that there was a sham investigation, and from that sham investigation I have some inference of age discrimination. My question to you is the formal committee, whatever, I forgot the name of that committee, but that committee that made the ultimate decision, how did they make that decision? Is there any viable allegation that they uncritically, and that's the language of the case law, they uncritically relied upon the report that was produced by Mr. Peloso? We do not believe so, Your Honor, and there were actually three levels of recommendation here, or three levels of decision making. The investigator himself made a recommendation. He interviewed nine people in addition to Mr. Markley and Mr. Provencher. Is that Mr. Peloso? Yeah, Mr. Peloso. I'm going to be no better with his name than anybody else in this room. The investigator. The investigator. The Parity Act investigator. With respect to that investigation, he gave Mr. Markley, Mr. Markley had three distinct opportunities to raise concerns and to correct things. One with the 25 listed transactions in the spreadsheet. He was interviewed once by Mr. Peloso, and then he was interviewed a second time at Mr. Markley's request. The statements of undisputed fact make clear at no time in any of those interactions did Mr. Markley raise any concern or claim about age discrimination. So he was interviewed three times. It was a different unit within the organization. There's a report prepared in which Mr. Peloso recommended termination. There's a review by a sales misconduct SAR, suspicious activity report committee. That committee, none of whom knew how old Mr. Markley was, again, undisputed facts, approved that recommendation based on their review. And then the third group was the sales misconduct committee within the same structure. And that is an independent group of senior leaders who review these matters regularly. It is fairly within judicial notice to know that banks with bad sales practices end up on Capitol Hill testifying. And this is an effort to avoid that by having independent people look at the facts. And they try to make something about the fact the ultimate report to this committee was on a single page. But that's how business works, frankly. That's not a departure from their normal investigative practice. It doesn't make it a rubber stamp. But to be clear on that, the two committees that followed from the Peloso recommendation, all they had was the report. They did not take additional information. They did not do anything beyond look at the report and decide whether to act. Is that correct? That is what they had, Your Honor. Okay. All right. And they made that decision consistently with the way they make all of their decisions. There was no reference or concern about age. This was an independent decision. I note one of the problems with this cat's paw subordinate liability, whatever rubber stamp theory is, in order to be illegal, it has to be a cat's paw because of some other source of discrimination. We're missing that here. There's not even an allegation of that here. The traditional cat's paw theory is I have a group of people who are discriminators, but rather than act themselves, they create a record on which other people rely. Well, in order to make that kind of showing, you have to demonstrate that the underlying group, the subordinate group, has a bias. But there's no showing. In fact, the admission of fact is Mr. Ott never demonstrated any age bias. Mr. Ott testified he did not know the age of Mr. Markley. And, in fact, Mr. Ott was actually a year or two older, as the court noted. So this is not a case where the investigation meets the standard of inadequacy. And, again, this time from Reeves, the U.S. Supreme Court, again cited by the Jones decision from this circuit, if the record conclusively revealed some other nondiscriminatory reason for the employer's decision or created only weak issues of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred, then the employer prevails. That is our case. We have done, U.S. Bank took allegations. They first had it reviewed within the operating unit. They identified 25 transactions, solicited Mr. Markley's input. He said Mr. ProVenture had been at meetings with all 25. We know that was untrue. And more than that, we know, and it's undisputed, that six and a half months earlier, Mr. Markley had given Mr. ProVenture a personal loan for $10,000 that was undisclosed and resulted in a serious warning to him telling him you have to follow the rules. Did ProVenture, I don't recall from the facts, did he end up getting fired too? He did, Your Honor, and he sued and his case was dismissed on summary judgment as well. And that's a recorded decision also from Judge Moore. So when we look at this and you go forward, you interview people, you review records, and you make findings. And Mr. ProVenture, as the court noted, admitted he wasn't at some of these meetings because he'd never met these people. So this is not a sham investigation. This is not the kind of investigation the courts look at and say, oh, no, I can't believe you're trying to get away with that. This is an honest, thorough investigation into a fraud allegation. And it had the same purpose as the earlier disciplinary event. So when this committee meets, they're aware that Mr. Markley has previously tried to assist Mr. ProVenture financially, and he's doing it again. Even if it was a less than perfect investigation, the point still remains there has to be some indication that that lack of imperfection was to cover up unlawful discrimination, right? Exactly, Your Honor, and that's the point. To have a cat's paw theory or an inadequate investigation theory, you have to have some underlying source of bias. That's missing from this record. When I personally first reviewed the record, I looked at it and said, well, everything that they're saying about age discrimination, you could put into any protected category into which he fell, and it would be just the same. Because there's no evidence of bias based on anything. And, in fact, that's because this was a business decision made to protect the integrity and the financial resources of the bank at a time when banks are under intensive scrutiny to make sure their sales practices are not resulting in bad behavior that harms customers. And you can't have a senior vice president whose role and goal is not to achieve his customers' goals or the organization that employs their goals, but whose aim is to assist a coworker who's in financial straits. And that's not age discrimination, and that's not something the court should be going out of their way to ignore well-established authority that says it has to be pretext for age discrimination in order for it to be actionable. Pretext doesn't exist in the air. It's not pretext plus to say pretext for age discrimination. It's simply pretext. What if Mr. Markley were the only African-American person in management at the bank and he could establish it was a sham investigation? Would that be enough to get to the jury? Your Honor, I think with that alone, I'm not sure that would be enough to get to a jury. But I would say that's very different from a claim made by a white male in his 50s in a bank. Realistically, he wasn't the only one. Mr. Ott, for example, was 57. Mr. Crittenden, who brought the complaint, was in his 40s. So it's not. But I think the theoretical question about whether and what can be enough on its face to create a fact issue, the Supreme Court dealt with this many years ago in the East Texas motor freight way when they were dealing with statistical proof and said sort of zero is zero. And you don't need a lot of statistical analysis to prove that there's maybe an inference of discrimination available. One isn't very far from zero. So I can't say what would happen in that specific case. I would think it depends a lot on what the facts are related to how the person was treated, how the person was interacted with, and how the organization was moving forward to achieve broader diversity goals. But on its face, simply being a member of a protected category and having a criticism of something, the Supreme Court has said that's not enough. You need to have something that ties into discrimination such that that prohibited factor is either part of the process or determinative of the outcome. That's particularly important in an age discrimination case where the U.S. Supreme Court has said a plaintiff's burden is to show age was the but-for cause of the adverse employment action. It was not here, and U.S. Bank respectfully requests that the court affirm the trial court's ruling. Thank you. Thank you, counsel. Is there any? Okay. Very briefly, Minute 54. My esteemed colleague mentioned that Ms. Rowe was 47. In fact, she was not 47. Her birthday was in 1973. She was 44 at the time of Mr. Markley's termination. It doesn't really matter, does it? I felt compelled. The SAR Review Committee, I think it is important there to note that somehow they've become involved in the decision. However, U.S. Bank noted when asked to identify anybody involved in the decision to terminate Mr. Markley that they identified only the SMDOC. The SAR Review Committee is a committee that deals with money laundering. No complaint was filed. They may have convened, but they had, according to U.S. Bank, no role in his termination, just the SMDOC, and that's in the appellate volume 5 at page 202, their response to discovery. When I hear counsel and I hear the court, I think what is getting lost is this detailed investigation that just was not that. It was predetermined. Mr. Ott was ready to terminate Mr. Markley before an investigation even occurred. We believe that that is sufficient to show pretext. And I think that's where I want to finish, is that this investigation is the pretext that we believe is necessary to show age bias. Thank you, Your Honors. Thank you. Thank you, counsel, for your arguments. Case is submitted.